# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CONRAD E. DOMINICUS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case no. 4:13cv0359 CAS/TCM** |
| | ) | |
| **IAN WALLACE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Conrad E. Dominicus, who is a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a conviction following a guilty plea. See 28 U.S.C. § 2254. This matter is before the undersigned United States Magistrate Judge for a review and recommended disposition of Petitioner's federal habeas petition. See 28 U.S.C. § 636(b). The undersigned recommends that the petition be denied because the first, third, and fourth grounds for relief are procedurally barred and may not be considered on their merits; and the second ground is without merit.

## Background

Petitioner was charged with first-degree assault in violation of Mo. Rev. Stat. § 565.050[1]

---

[1] The first-degree assault statute in Missouri provides that

1.  A person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2.  The offense of assault in the first degree is a class B felony unless in the course thereof the person inflicts serious physical injury on the victim, or if the victim of such assault is a special victim, as the term "special victim" is defined under section 565.002, in which case it is a class A felony.

Mo. Rev. Stat. § 565.050. "Serious physical injury" is statutorily defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Mo. Rev. Stat. § 565.002(6).

and armed criminal action in violation of Mo. Rev. Stat. § 571.015[2] for shooting Brad Rhodes

("Victim") on January 17, 2007.  (Guilty Plea Tr., Resp't Ex. F, at 5 [Doc. 11].)  On December 8,

2008, Petitioner pleaded guilty to both counts. (Guilty Plea Tr., Resp't Ex. F.)  During the plea

hearing, the prosecutor advised that

> the State would show beyond a reasonable doubt as to Count 1 that . . . , on or about January 17th, 2007 at 6:45 a.m., [at a specified address] in the County of St. Louis, State of Missouri, [Petitioner] knowingly caused serious physical injury to [Victim] by shooting him.
>
> As to Count 2, the State would show beyond a reasonable doubt that . . . , on or about January 17th, 2007 at 6:45 a.m., [at the same specified address] in the County of St. Louis, State of Missouri, [Petitioner] committed the felony of assault in the first degree charged in Count 1, that during the course of committing that assault in the first degree, [Petitioner] knowingly committed that felony by, with and through the use, assistance and aid of a deadly weapon.
>
> . . . [T]he evidence would . . . show that [Petitioner] is a resident of California, and that he had dated . . . [V]ictim's girlfriend and later fiancé, and that he came here and had been in the area for a couple of days.  He confronted . . . [V]ictim as . . . [V]ictim was attempting to leave for work in the morning. [Petitioner] was wearing all black, with a black ski mask, and he had a gun with a silencer.  He shot at . . . [V]ictim five times.  He hit . . . [V]ictim once.  He then fled.
>
> The State would produce evidence that the black ski mask that he was wearing was left at the scene, and DNA was taken from that, which matched [Petitioner].  Also, [Petitioner] was arrested about a week to 10 days later in Los Angeles.  And upon being questioned by the St. Louis County police officers and detectives investigating the case, he made a confession as to shooting . . .

---

[2]  The state statute defining the armed criminal action offense provides, in relevant part, that:

. . . any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years.

Mo. Rev. Stat. § 571.015.

[V]ictim. And that was memorialized in an audio recording, which the State would produce at trial.

. . . [S]everal pieces of evidence were also taken out of [Petitioner]'s car, which provided a connection to [Petitioner] being in St. Louis at the time, including a GPS, a police scanner, and his cell phone.

(Id. at 5-6.) The prosecutor also reported that the range of punishment was a term of imprisonment of ten to thirty years or life for first-degree assault, and a term of imprisonment of from three years to an unlimited number of years or life for armed criminal action, with the terms running either consecutively or concurrently. Id. at 7. Petitioner said he understood that range of punishment; and the State recommended that Petitioner be sentenced to concurrent terms of imprisonment of twenty-five years. Id. at 7, 9. The plea court noted its understanding that Petitioner did not accept the State's recommendation and asked for a presentence investigation report, which understanding Petitioner agreed with. Id. at 9-10.

The plea court then asked Petitioner various questions about his attorney's representation. Id. at 10-12. Petitioner responded that no one had made any promises or threats to induce the plea; that his attorney had complied with his requests and answered his questions; that he had enough time to discuss the case with his attorney; that he had no complaints or criticisms of his attorney; that he did not know of anything his attorney could have done that he did not do or of any witnesses the attorney could have contacted but did not; that his attorney had investigated to Petitioner's "complete satisfaction"; that he believed his attorney had fully advised him of "all aspects of [the] case, including [Petitioner's] legal rights and the possible consequences of [the] plea"; and that he believed his "attorney ha[d] adequately, completely, and effectively represented [Petitioner] in [his] defense to the[] charges." Id.

The plea court also noted the trial had been set to begin the day of the plea, and went through the trial rights Petitioner was waiving by pleading guilty and not having a trial.  <u>Id.</u> at 13. Petitioner indicated he understood what he was waiving; he had understood the plea court's questions; and no one had asked him to lie in response to the court's questions.  <u>Id.</u> at 13-14. Petitioner then pleaded guilty to "the charge of assault in the first degree, a class A felony, and armed criminal action, an unclassified felony."  <u>Id.</u>  The plea court found the plea had a factual basis, and was voluntarily and intelligently made, with a full understanding of the charges and consequences of the plea, as well as an understanding of the jury trial rights and the plea's effect on those rights.  <u>Id.</u> at 14-15.

Before concluding, the plea court permitted Victim to make a statement.  <u>Id.</u> at 15-18.  In part, Victim told the court that, after the shooting, he was taken to a hospital where he stayed "for a number of days."  <u>Id.</u>

On January 30, 2009, the plea court sentenced Petitioner to concurrent terms of imprisonment of twenty years for first-degree assault and three years for armed criminal action. (Sentencing Tr. at 6-7, Resp't Ex. F.)  The plea court then asked Petitioner about his attorney's representation.  <u>Id.</u> at 9-10.  In particular, the plea court asked whether, prior to the plea, Petitioner had sufficient opportunity to discuss the case with the attorney, his attorney did things Petitioner had asked him to do, and his attorney did not do things Petitioner asked him not to do, to which Petitioner responded affirmatively.  <u>Id.</u> The plea court also asked Petitioner whether his attorney had made any threats or promises to Petitioner to induce his guilty plea, which Petitioner denied; and whether he was satisfied with his attorney's services, which Petitioner

acknowledged.  Id. at 10.  Based on this colloquy, the plea court found there was no probable cause that Petitioner had received the ineffective assistance of counsel.  Id.

Petitioner did not file a direct appeal, but did timely seek post-conviction relief by filing on March 9, 2009, a pro se post-conviction motion under Mo. S. Ct. Rule 24.035.  (Pet'r Post-Conviction Mot., Legal File, Resp't Ex. A, at 6-11).  Petitioner presented three claims in that motion.  First, he urged that he "was misled by [his] attorney" to "take a blind plea."  (Id. at 7.)  Second, Petitioner stated that he wanted a trial because there was enough evidence showing he was not guilty in that there was no gun, there were no witnesses, there were no fingerprints, and he had no prior history, and he would "never hurt a person [and] would give [his] own life to help someone in need of help."  (Id.)  For his third claim, Petitioner argued his attorney was ineffective in failing to challenge the voluntariness of his confession.  (Id.)

Through counsel, Petitioner filed an amended post-conviction motion, presenting nine claims, designated as 7(a) through 7(i), that his attorney provided ineffective assistance of counsel.  (Pet'r Am. Postconviction Mot., Legal File, Resp't Ex. A, at 18-28, 35.)   First, Petitioner contended that his attorney failed to review and fully investigate medical information, and to consult with medical professionals, to determine whether Victim had suffered a serious physical injury as defined in Mo. Rev. Stat. § 565.002(6) to support the determination that he was guilty of the class A felony of first-degree assault.  (Id. at 19-21.)  Second, Petitioner argued that his attorney failed to secure Petitioner's medical records from Lakewood Regional Center ("Lakewood") in Lakewood, California or to interview either a physician there or the detective who took Petitioner there.  (Id. at 21.)  In support of this claim, Petitioner reported that he had blacked out or had a seizure during the police interrogation on January 30, 2007; he was taken to Lakewood before he made any admissions; and then the interrogation resulting in his confession

continued after his release from that facility.  (<u>Id.</u>)  For his third claim, Petitioner alleged his attorney failed to investigate numerous text and voice mail messages between Petitioner and Victim's girlfriend . . . which would show she lured Petitioner to the St. Louis area "to set [Petitioner] up."  (<u>Id.</u> at 22.)  In his fourth claim, Petitioner urged that his attorney failed to obtain a forensic computer examination and failed to review materials on Petitioner's computer after it was seized by the police, to show Victim's girlfriend "almost daily" sent him messages and photographs "which were entirely inconsistent with her claim that [her] relationship [with Petitioner] was over."  (<u>Id.</u> at 23.)  Petitioner also argued, for his fifth ground, that his attorney "failed to explore numerous false accusations that . . . [Victim's girlfriend] leveled against [Petitioner] prior to the" shooting, including that Petitioner stole and vandalized her car, although "someone else was apprehended driving her stolen vehicle."  (<u>Id.</u>)  Petitioner urges the information gathered from such an investigation "would have corroborated [Petitioner]'s defense that . . . [Victim's girlfriend] attempted to set him up for a crime he did not commit on a previous occasion."  (<u>Id.</u>)

For his sixth ground, designated as 7(f), Petitioner contended that his attorney misled him "in that [the attorney] did not accurately advise [him] that[,] if he was sentenced for Assault First Degree, he would have to serve a minimum of 85% of any prison sentence imposed."  (<u>Id.</u> at 24.)  In particular, Petitioner stated that his attorney reported he had presented the case to a focus group or jury and each person had returned a guilty verdict, and, therefore, Petitioner should consider a blind plea to avoid facing imprisonment of at least twenty-five years, as recommended by the prosecutor, if he was found guilty at trial.  (<u>Id.</u>)  Furthermore, Petitioner urged, his plea attorney told him that if he took "a blind plea," he would serve "no more than eight years because he had no prior criminal history."  (<u>Id.</u>)

For his seventh claim, referred to as 7(g), Petitioner argued that, before the guilty plea, his attorney did not meet with him a sufficient amount of time so Petitioner "did not have sufficient time to discuss his rights with counsel, the ramifications of his guilty plea, and possible alternatives to pleading guilty." (Id. at 25.)

For his eighth claim, Petitioner urged that his attorney did not ask for a continuance of the sentencing proceeding after "the prosecutor presented evidence that [a woman had] filed a temporary restraining order against [Petitioner] in California for threatening her sister." (Id. at 26.) Petitioner asserted the accusation was false and the sentencing court in this case improperly relied on that information in determining an appropriate sentence. (Id.)

Finally, for his ninth claim, which is designated 7(i), Petitioner contended that his attorney failed to advise him that he would be automatically deported as a result of his guilty plea. (Id. at 35.) Petitioner cited 8 U.S.C. § 1228(c), 8 U.S.C. § 1101(a)(43), and **Padilla v. Kentucky**, 559 U.S. 356 (2010), in support of this claim.

The post-conviction motion court resolved most of Petitioner's claims without a hearing, but held an evidentiary hearing on the claims designated as 7(f), 7(g), and 7(i). (See, e.g., Tr. of Evidentiary Hr'g, Resp't Ex. B; Findings of Fact, Conclusions of Law, Order, Jdg., and Decree ("Judgment"), dated Feb. 14, 2011, Legal File, Resp't A, at 47-58.) The court denied Petitioner's amended motion after the hearing. (Id.) The motion court concluded that "a claim of ineffective assistance of counsel [pertaining to a guilty plea] is immaterial except to the extent that it impinges upon the voluntariness and knowledge with which the plea was made. Hagen v. State, 836 S.W.2d 459, 463 (Mo. banc 1992)"; that Petitioner's claims were refuted by the record; that his attorney did not provide ineffective assistance; and that Petitioner's federal constitutional rights were not violated. (Id. at 57-58.) With respect to claim 7(f), the court found Petitioner's

testimony lacked credibility and the claim was not credible. (Id. at 52-53.) The motion court concluded that claim 7(g) was not credible and was refuted by Petitioner's testimony at the plea hearing. (Id. at 54-55.) Additionally, for claim 7(i), the court found that Petitioner's "testimony that he would have risked a substantially longer sentence in prison [by insisting on a] trial if he was aware of deportation lacks credibility." (Id. at 56.)

In his post-conviction appeal, Petitioner presented two points that his plea attorney violated his rights to due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. (Pet'r Br., Resp't Ex. C, at 11-13, 18-19.) For point one, Petitioner argued those rights were violated by his plea attorney's failure to advise him "as to the effect of his guilty plea on his immigration status." (Id. at 11, 13.) For his second point, Petitioner contended that those rights were violated by his plea attorney's failure to advise him "as to the effect of his guilty plea on his parole eligibility." (Id. at 12, 18-19.)

The Missouri Court of Appeals for the Eastern District affirmed the denial of Petitioner's post-conviction motion in a summary per curiam order, dated February 28, 2012, explaining its decision in a memorandum sent only to the parties. (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E.)

Before addressing the merits of Petitioner's points on appeal, the state appellate court found as follows.

> On December 8, 2008, [Petitioner] pleaded guilty to first-degree assault and armed criminal action. At the plea hearing, [Petitioner] testified that he was aware of the charges against him and that his attorney had "fully explained the nature of the charges." When asked to recite the factual basis for the charges, the State alleged that [Petitioner], a resident of California who had previously dated . . . [V]ictim's girlfriend, came to St. Louis and confronted . . . [V]ictim as he was leaving for work in the morning. According to the State, . . . [Petitioner] wore all black, including a black ski mask, and carried a gun equipped with a silencer. [Petitioner] shot at . . . [V]ictim five times, hitting him once. Police retrieved a

black ski mask from the scene, and the DNA taken from the mask matched [Petitioner]'s. Police arrested [Petitioner] in California, and [Petitioner] confessed to shooting . . . [V]ictim. When the authorities searched [Petitioner]'s car, they found several items which placed [Petitioner] in St. Louis at the time of the shooting, including a GPS device, a police scanner, and a cell phone. [Petitioner] agreed that these facts were "substantially correct."

The State informed the court that the range of punishment for first-degree assault was [ten to] thirty years' imprisonment, or a life sentence, and the range of punishment for armed criminal action was three years to an unlimited number of years, or a life sentence. The State recommended that the court sentence [Petitioner] to twenty-five years' imprisonment. [Petitioner] affirmed that he understood the range of punishment for the charged offenses, asked the court not to follow the State's recommendation, and entered a blind plea.

After confirming that [Petitioner] understood the nature of a blind plea, the court asked [Petitioner] if "anyone made any promises or threats to [him] or [his] family to induce [him] to plead guilty." [Petitioner] answered, "No." [Petitioner] affirmed that he had been given enough time to confer with plea counsel; that plea counsel had "answered all of [his] questions"; and that he believed that plea counsel had fully advised him regarding his rights and the possible consequences of his plea. After ensuring that [Petitioner] understood that he was waiving his right to a trial by pleading guilty, the court asked: "At any time, did your attorney or anyone else tell you to lie in response to my questions?" [Petitioner] answered, "No." [Petitioner] assured the court that he was pleading guilty voluntarily and of his own free will. The court then accepted [Petitioner]'s plea of guilty. At the sentencing hearing on January 30, 2009, the court sentenced [Petitioner] to concurrent terms of twenty years' imprisonment on the first-degree assault charge and three years' imprisonment on the armed criminal action charge.

On March 9, 2009, [Petitioner] filed a *pro se* Rule 24.035 motion, which counsel later amended. [Petitioner]'s amended motion alleged, *inter alia*, that his plea counsel had provided ineffective assistance by "not accurately advis[ing] him" that he was pleading guilty to a "dangerous felony" and that Section 558.019.3 requires a defendant convicted of a "dangerous felony" to serve a minimum of eighty-five percent of his sentence before becoming eligible for parole. The court granted [Petitioner] an evidentiary hearing on this claim. Prior to the evidentiary hearing, however, [Petitioner] filed a motion requesting leave to amend his Rule 24.035 motion to also allege that his counsel was ineffective for failing to advise him that his guilty plea might result in his deportation from the United States. The court permitted [Petitioner] to amend his claim at the start of the evidentiary hearing on October 15, 2010.

At the evidentiary hearing, [Petitioner] testified that he wanted to take his case to trial from its very inception, but his attorney, Frank Anzalone advised him to enter a blind plea of guilty. According to [Petitioner], Mr. Anzalone told him that he "would get anywhere under 8 to 10 years." [Petitioner] also testified that Mr. Anzalone never discussed the eighty-five percent requirement with him, but rather told him that he "would serve probably half of whatever time [he] got."

Additionally, [Petitioner] stated that he met with Mr. Anzalone on the morning of his plea hearing. According to [Petitioner], Mr. Anzalone advised him to "agree with whatever the judge asked [him]" and to "go ahead and plead guilty." [Petitioner] testified that Mr. Anzalone reiterated that he would receive a sentence of less than eight to ten years. [Petitioner] further testified that, had he known that the law required him to serve eighty-five percent of whatever sentence he received, he would not have pleaded guilty. [Petitioner] further stated that Mr. Anzalone never discussed [Petitioner]'s immigration status at any point or indicated that a guilty plea might result in his deportation. [Petitioner] maintained that, had he been advised that he would be deported after serving eighty-five percent of whatever sentence he received, he would not have pleaded guilty but would have insisted on going to trial. During cross-examination, [Petitioner] admitted that his cell phone records indicated that he was in the St. Louis area at the time of the shooting, and that the police found a GPS system in his car in which . . . [V]ictim's address had been entered.

[Petitioner]'s mother, Patricia Dominicus, also testified on his behalf. Ms. Dominicus stated that she and her son met with Mr. Anzalone for five minutes on December 8 prior to the plea hearing. She stated that, during that conversation, Mr. Anzalone told [Petitioner] that if he pleaded guilty, he "wouldn't get more than 8 to 10 years." Ms. Dominicus further testified that Mr. Anzalone never mentioned during their meeting that [Petitioner] would have to serve eighty-five percent of whatever sentence the court imposed. Instead, she alleged that Mr. Anzalone told [Petitioner] that, with good behavior, he might only serve half his sentence. Ms. Dominicus confirmed that [Petitioner] was a citizen of Sri Lanka, was not a citizen of the United States, and was here in this country as a permanent resident. According to Ms. Dominicus, Mr. Anzalone never, in her presence, informed [Petitioner] that by pleading guilty he would be subject to automatic deportation proceedings.

The State called as a witness John B. Gourley, a former business associate of Mr. Anzalone. Mr. Gourley stated that Mr. Anzalone had practiced law from "the early 1970s, like '69 or '70, something like that," until his death in 2010. According to Mr. Gourley, Mr. Anzalone specialized in criminal law and had tried "probably hundreds of cases," including first-degree assault cases and death penalty cases. Mr. Gourley testified that he would "bet [his] last $100" that Mr. Anzalone knew the range of punishment for a charge of assault in the first degree.

He further testified that he was sure that Mr. Anzalone knew the rule requiring a person convicted of first degree assault to serve eighty-five percent of his sentence because he and Mr. Anzalone had discussed it in regards to prior cases.

On February 14, 2011, the motion court issued findings of fact and conclusions of law denying [Petitioner]'s Rule 24.035 motion.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 2-5 (twenty-first through twenty-third, twenty-sixth, thirty-fourth, forty-first, forty-fourth, and fifty-eighth alterations in original).)

In addressing the legal principles applicable to Petitioner's ineffective assistance of counsel challenges, the Missouri Court of Appeals stated:

To prevail on a claim of ineffective assistance of counsel, a [post-conviction] movant must prove that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a guilty plea, a [post-conviction] movant establishes prejudice by demonstrating that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The movant bears the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence. Rule 24.035(i); State v. Nunley, 980 S.W.2d 290, 292 (Mo. banc 1998).

When a defendant enters a plea of guilty, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness and knowledge with which the plea was made. Powell v. State, 945 S.W.2d 622, 624 (Mo. [Ct.] App. . . . 1997). For a guilty plea to be voluntary and intelligent, the defendant must have knowledge of the "direct consequences" of his plea. Reynolds v. State, 994 S.W.2d 944, 946 (Mo. banc 1999). "Direct consequences are those which 'definitely, immediately, and largely automatically follow the entry of a plea of guilty.'" Johnson v. State, 318 S.W.3d 313, 317 (Mo. [Ct.] App. . . . 2010) (quoting Huth v. State, 976 S.W.2d 514, 516-17 (Mo. [Ct.] App. . . . 1998)). In comparison, collateral consequences are "those that do not follow automatically from the guilty plea." State v. Rasheed, 340 S.W.3d 280, 284 (Mo. [Ct.] App. . . . 2011). Neither counsel nor the trial court is under an affirmative obligation to inform a defendant of the "collateral consequences" of his guilty plea. Huth, 976 S.W.2d at 516.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't

Ex. E, at 6.)

With respect to Petitioner's first point, that his plea attorney provided ineffective

assistance of counsel by failing to advise Petitioner "as to the effect of his guilty plea on his

immigration status," the state appellate court found

> [Petitioner] relies on the United States Supreme Court's recent decision in
> Padilla . . . , for the proposition that an attorney renders ineffective assistance
> when she fails to inform her client of the immigration consequences of his guilty
> plea. See [Padilla, 559 U.S.] at [360, 368-69]. In Padilla, a criminal defendant
> alleged that he received ineffective assistance of counsel when his attorney failed
> to inform him that pleading guilty to the charged offense would almost certainly
> result in his deportation from the United States. Id. at [359-60]. The Supreme
> Court of Kentucky declined to grant the defendant an evidentiary hearing on his
> claim because it held that deportation was a "collateral consequence" of a
> conviction and, therefore, the defendant's attorney did not render ineffective
> assistance by failing to advise the defendant regarding deportation. Id. at [364-
> 65]. On appeal, the United States Supreme Court declined to categorize
> deportation as a "direct consequence" or "collateral consequence" of a guilty plea.
> Id. at [365]. Instead, the Court described deportation as a unique consequence
> and held that "counsel had an obligation to advise [the defendant] that the offense
> to which he was pleading guilty would result in removal from this country." Id. at
> [360; 365-66]. Under Padilla, failure to advise the defendant of his likely
> deportation is a "constitutional deficiency sufficient to satisfy the first prong" of
> the Strickland test. Id. at [369].

> Even if we accept [Petitioner]'s claim that his counsel's performance was
> deficient under Padilla, [Petitioner] cannot prevail on his ineffective assistance of
> counsel claim unless he proves that the deficient performance resulted in
> prejudice. See Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) ("A
> criminal defendant must satisfy *both* the performance prong and the prejudice
> prong to prevail on an ineffective assistance of counsel claim.") (emphasis
> original).

> Here, [Petitioner] failed to establish that, but for counsel's allegedly
> deficient performance, he would not have pleaded guilty and would have
> proceeded to trial. At the evidentiary hearing, [Petitioner] testified that he would
> have proceeded to trial had he known that "[he] would have to do 85 percent of
> any sentence and after that sentence [he] would be deported." However, the
> motion court found that this testimony was not credible, and we defer to the

motion court on determinations of witness credibility.  <u>Stufflebea[n] v. State</u>, 986 S.W.2d 189, 193 (Mo. [Ct.] App. . . . 1999).  Furthermore, [Petitioner] faced strong evidence of his guilt, including:  a black ski mask found at the scene of the crime; and a GPS system found in his automobile with . . . [V]ictim's address stored on it.  When interrogated by the police, [Petitioner] confessed to the crime.  In light of these facts, we cannot say that the Motion court clearly erred in finding that [Petitioner] failed to prove by a preponderance of the evidence that he would have proceeded to trial if his attorney had advised him regarding his immigration status.  Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated February 28, 2012, Resp't Ex. E, at 7-8 (footnote omitted) (second, seventh, and eighth alterations in original).)  In the omitted footnote, the Missouri Court of Appeals noted that the **<u>Padilla</u>** case involved an attorney who had advised the defendant "that he 'did not have to worry about [his] immigration status.'  <u>Padilla</u>, [559 U.S. at 369] (quoting <u>Commonwealth v. Padilla</u>, 253 S.W.3d 482, 483 (Ky. 2008)."  (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 7 n.1.)  The state appellate court further noted that, in reaching its decision in **<u>Padilla</u>**, the United States Supreme Court "declined to distinguish between an attorney's failure to inform and affirmative misadvice" about the effect of a guilty plea on the defendant's immigration status.  (<u>Id.</u>)

When resolving Petitioner's second point, that his plea attorney provided ineffective assistance of counsel by failing to advise him "as to the effect of his guilty plea on his parole eligibility," the Missouri Court of Appeals found

We agree with the State that [Petitioner]'s point relied on fails to state a claim that entitles him to relief.  The Missouri Supreme Court has held that an attorney is not ineffective for failing to advise a criminal defendant about parole eligibility, because parole eligibility is a "collateral consequence" of a conviction.  <u>Reynold . . .</u>, 994 S.W.2d [at] 946 . . . .  Recently, in <u>Webb v. State</u>, 334 S.W.3d 126 (Mo. banc 2011) [(per curiam)], the [Missouri] Supreme Court adopted the distinction that, while counsel is not ineffective for failing to advise a defendant regarding parole eligibility, counsel is ineffective for affirmatively misadvising a client regarding parole eligibility.  <u>Id.</u> at 127, 129.  Here, [Petitioner]'s point relied

> on alleges only that his plea counsel was ineffective for failing to advise him
> regarding his parole eligibility. This court has held that <u>Webb</u> did not overturn
> the <u>Reynolds</u> rule in this context. <u>Smith v. State</u>, 353 S.W.3d 1, 5 (Mo. [Ct.] App.
> . . . 2011). Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 8-9 (footnote omitted).) In the omitted footnote, the state appellate court noted that, in the argument portion of his brief, Petitioner argued that his attorney "affirmatively misadvised him that he need only serve fifty percent of his sentence before becoming eligible for parole." (<u>Id.</u> at 9 n. 2.) The court declined to consider this argument because it was not raised in Petitioner's point on appeal and an issue set forth only in the argument section of a brief is not presented for appellate review. (<u>Id.</u>, citing <u>State v. Nibarger</u>, 304 S.W.3d 199, 205 n.5 (Mo. Ct. App. 2009).)

The state appellate court issued its mandate on March 22, 2012. (<u>See</u> Mar. 22, 2012, docket entry in <u>Dominicus v. Missouri</u>, No. ED96587 (Mo. Ct. App. filed Mar. 28, 2011) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited Dec. 16, 2015)).

On February 25, 2013, Petitioner filed his federal habeas petition, presenting four grounds for relief. In ground one, Petitioner urges that his plea attorney provided ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments by incorrectly advising Petitioner that, if he pleaded guilty to both offenses, he would receive an eight-to-ten year sentence and would only have to serve fifty percent of that sentence. (Pet'r Pet'n at 6 [Doc. 1 at 5].) As Respondent suggests, the undersigned considers ground one as presenting two claims. One claim focuses on the plea attorney's advice about the length of sentence to be imposed; the other focuses on the plea attorney's advice about the length of time Petitioner would

have to serve before being eligible for parole.  For his second ground, Petitioner contends that his plea attorney provided ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments, by failing to advise Petitioner that, by pleading guilty to the felony charges, he would be subject to deportation.  (Id. at 7.)  Petitioner argues in his third ground that he was denied the effective assistance of counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments, because his plea attorney did not obtain Victim's medical records and Victim did not sustain a "serious physical injury" needed to establish first-degree assault.  (Id. at 8.)  For his fourth and final ground, Petitioner contends the trial court exceeded its sentencing jurisdiction, in violation of Petitioner's right to due process of law under the Sixth and Fourteenth Amendments, by sentencing Petitioner for the Class A felony assault conviction when the State was not required to prove Victim sustained a "serious physical injury" as a result of the shooting.  (Id. at 10.)

Respondent counters that the Court may not consider the merits of grounds one, three, and four because they are procedurally barred.  In particular Respondent maintains that Petitioner procedurally defaulted the claims in those grounds by not fairly presenting them to the state courts.  Furthermore, Respondent argues, Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to allow consideration of their merits.  Respondent also contends that ground two lacks merit because Petitioner has not demonstrated the prejudice element of an ineffective assistance of counsel claim.

### Discussion

Procedural Bar.  Respondent argues that Petitioner's first, third, and fourth grounds are procedurally barred and may not be considered on their merits.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court."  **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)); see also **Baldwin v. Reese**, 541 U.S. 27, 29 (2004) (noting that "the prisoner must 'fairly present' his claim in each appropriate state court").  "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." **Wemark v. Iowa**, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) (internal quotation marks and citations omitted).  Claims that have not been fairly presented to the state courts are procedurally defaulted.  **Turnage v. Fabian**, 606 F.3d 933, 936 (8th Cir. 2010).

Missouri requires the raising of constitutional claims at the first available opportunity. See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  In Missouri, a direct appeal from a guilty plea is not the proper time to present federal constitutional claims in state court as "[i]t is well settled that in [such an appeal], th[e Missouri appellate] court's review is restricted to the subject-matter jurisdiction of the trial court or the sufficiency of the information or indictment."  **State v. Goodues**, 277 S.W.3d 324, 326 (Mo. Ct. App. 2009); accord **State ex rel. Simmons v. White**, 866 S.W.2d 443, 446 n.4 (Mo. 1993) (en banc).  Due to the limited scope of a direct appeal after a guilty plea, constitutional challenges to the conduct of a state court or an attorney with respect to a guilty plea may be presented to the state court through a post-conviction proceeding under Missouri Supreme Court Rule 24.035.  See **Wilder v. State**, 301 S.W.3d 122, 127-30 (Mo. Ct. App. 2010)

(considering merits of a double jeopardy claim in a post-conviction proceeding under Rule 24.035). Specifically, that Rule provides the "exclusive procedure" for presentation to state court of "claims that the conviction or sentence imposed violates the . . . constitution of the United States, including claims of ineffective assistance of . . . counsel." Rule 24.035(b). Claims that should have been but were not presented in an amended post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding. See, e.g., **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding, in a post-conviction proceeding after a jury trial, that claims not presented in an amended post-conviction motion or in the appeal from the denial of that motion are procedurally defaulted).

Petitioner did not properly raise or fairly present either part of ground one, or grounds three and four, in his post-conviction appeal. Rather, Petitioner asserted in his first point in that appeal a challenge that his plea attorney did not advise him about the effect of his guilty plea on his immigration status and in his second point a challenge that his plea attorney "failed to advise [Petitioner] as to the effect of his guilty plea on his parole eligibility." (Pet'r Br., Resp't Ex. C, at 11-12, 13, 18-19.) Neither of these points present issues now pursued in ground one that his plea attorney erroneously told Petitioner his sentence would be limited to eight-to-ten years and he would be eligible for parole after serving fifty-percent of the imposed sentence. Nor do either of those points on appeal focus on any state court or plea attorney conduct pertaining to the "serious physical injury" requirement for a first-degree assault offense, issues now pursued by Petitioner in his third and fourth grounds for federal habeas relief.

While not clearly addressing the procedural default of grounds three and four, or of the parole eligibility portion of ground one, Petitioner argues that he properly presented the eight-to-ten year sentence portion of ground one in his post-conviction appeal. In support of his position, Petitioner refers to the argument portion of his appellate brief. The state appellate court, however, concluded in Petitioner's post-conviction appeal that an issue presented only in the argument portion of a brief and not in a point on appeal failed to preserve the issue for appellate review. (See Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 9 n.2.) "Determinations of state law by the Missouri Court of Appeals are binding" in a federal habeas proceeding. **Crump v. Caspari**, 116 F.3d 326, 327 (8th Cir. 1997); see also **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Because Petitioner only presented the length-of-sentence advice issue in the argument section of his brief in his post-conviction appeal, rather than in a point on appeal, that portion of ground one was not properly raised or fairly presented to the state courts. Therefore, both claims in ground one, as well as the claims in grounds three and four, are procedurally defaulted.

Absent a showing of either cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural

rules in raising the claims").  "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'"  **Maples v.  Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)).  There is no exhaustive catalog of the objective impediments, and the precise contours of the cause requirement have not been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not suggested or demonstrated any cause for the procedural default of the claims in grounds one, three, and four.  No cause having been established, the undersigned does not need to address the prejudice element.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).  Under the circumstances, no cause and prejudice exists to allow consideration of the merits of Petitioner's procedurally defaulted claims in grounds one, three, and four.

To the extent a "miscarriage of justice" may allow a federal habeas court to address the merits of a procedurally defaulted claim, Petitioner has not demonstrated the applicability of that exception either.  A miscarriage of justice exists if Petitioner shows that he is actually innocent. <u>See</u> **Sawyer**, 505 U.S. at 339-40.  To establish actual innocence, Petitioner must provide new evidence and "show that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits

of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner has not presented in this federal habeas proceeding any new evidence demonstrating that he is innocent. Therefore, Petitioner has not established a miscarriage of justice to allow the consideration of the merits of the procedurally defaulted claims in grounds one, three, and four.

Concluding that the claims in grounds one, three, and four are procedurally barred from consideration on their merits, the undersigned will not further consider the merits of those grounds. The merits of ground two will, however, be addressed. In that ground, Petitioner contends that he was denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments when his plea attorney failed to advise him that, by pleading guilty, he would be subject to deportation.

Standard of Review for Habeas Claim under 28 U.S.C. 2254. "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; see also **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on Cullen, supra); accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The

state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011-12 (8th Cir. 2004)). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65.

A petitioner has a heavy burden to overcome admissions the petitioner made at a plea hearing. A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" **Nguyen v. United States**, 114 F.3d 699, 703 (8th Cir. 1997) (quoting <u>Voytik v. United States</u>, 778 F.2d 1306, 1308 (8th Cir. 1985)); **Bramlett v. Lockhart**, 876 F.2d 644, 648 (8th Cir. 1989) (quoting <u>Voytik</u>, 778 F.2d at 1308); <u>see</u> <u>also</u> **Blackledge v. Allison**, 431 U.S. 63, 74 (1977) ("Solemn

declarations in open court carry a strong presumption of verity" and representations of the defendant at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings").

    <u>Ineffective Assistance of Counsel Claim.</u>  As noted earlier, in his second ground, Petitioner asserts that his plea attorney provided ineffective assistance of counsel by failing to advise Petitioner that he would be subject to deportation from the United States upon pleading guilty. Petitioner presented this issue in the first point of his post-conviction appeal, arguing that he would have insisted on going to trial if he had been informed that pleading guilty to a dangerous felony would likely lead to his expedited deportation. (<u>See</u> Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 7.)

    The Missouri Court of Appeals concluded Petitioner's plea attorney did not provide ineffective assistance of counsel by failing to advise Petitioner of the effect his guilty plea would have on his deportation because, even assuming that failure constituted deficient performance under **<u>Padilla</u>**, <u>supra</u>, Petitioner had not established prejudice for that ineffective assistance of counsel claim. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 28, 2012, Resp't Ex. E, at 7-8.) In reaching this decision, the state appellate court first deferred to the motion court's conclusion that Petitioner's testimony regarding this matter, specifically that he would have proceeded to trial if he had known he had to serve eighty-five percent of his sentence and then would be deported, lacked credibility. <u>Id.</u> at 8. That court also found that Petitioner "faced strong evidence of his guilt." <u>Id.</u> In particular, that court pointed to the following evidence of Petitioner's guilt

      a black ski mask found at the scene of the crime contain[ed] his DNA; cell phone
      records plac[ed] him in St. Louis near the scene of the crime; and a GPS system

found in his automobile [had] . . . [V]ictim's address stored on it.  Additionally,
w]hen interrogated by the police, [Petitioner] confessed to the crime.

Id.

An accused's Sixth Amendment right to the assistance of counsel is a right to the
effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir.
2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  In **Strickland**, supra,
the Supreme Court established a two-part test for determining whether or not an attorney
provided effective assistance of counsel.  The petitioner must establish both deficient
performance, i.e., that "counsel's representation fell below an objective standard of
reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different."
**Strickland**, 466 U.S. at 687-88, 694.  This same two-part standard "applies to challenges
to guilty pleas based on [the] ineffective assistance of counsel."  **Hill**, 474 U.S. at 57-59;
see also **Wilcox v. Hopkins**, 249 F.3d 720, 722 (8th Cir. 2001).  Importantly, to prevail
on an ineffective assistance of counsel claim in a § 2254 habeas case, the petitioner

> must do more than show that he would have satisfied Strickland's test if his claim
> were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1),
> it is not enough to convince a federal habeas court that, in its independent
> judgment, the state-court decision applied Strickland incorrectly.  Rather, he must
> show that the [state appellate court] applied Strickland to the facts of his case in
> an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002); **Underdahl v. Carlson**, 381 F.3d at 742 (8th Cir.
2004).

The state appellate court correctly summarized **Padilla** and, based on that decision,
assumed counsel's failure to advise Petitioner about the deportation consequences of his plea

constituted deficient performance. Because there is no issue raised about the application of **Padilla** to this case, in which Petitioner's judgment became final before the issuance of the **Padilla** decision, the undersigned will assume **Padilla** is properly considered because it was issued before the decisions of the state post-conviction motion and appellate courts. See **Chaidez v. United States**, 133 S. Ct. 1103, 1105, 1107 (2013) (deciding that defendants whose convictions became final prior to Padilla cannot benefit from its holding); **Collins v. Youngblood**, 497 U.S. 37, 41 (1990) (retroactivity is not jurisdictional); **State v. Williams**, 871 S.W.2d 450, 452 (Mo. 1994) (en banc) (a final judgment occurs when sentence is entered); **State v. Arnold**, 230 S.W.3d 353, 354 (Mo. Ct. App. 2007) (applying Williams to a guilty plea case). Therefore, the undersigned concludes the state court correctly and reasonably applied **Padilla** to resolve the performance prong of this ineffective assistance of counsel claim.

The **Padilla** decision did not, however, address the prejudice element of the claim. **Padilla**, 559 U.S. at 369. When a petitioner has pleaded guilty,

> [t]he . . . "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

**Hill**, 474 U.S. at 59. The assessment of prejudice resulting from an attorney's allegedly deficient performance pertaining to a guilty plea, depends "in large part on a prediction whether" plea negotiations or a trial would have turned out differently. Cf. **Hill**, 474 U.S. at 59. Such a prediction must "be made objectively." **Id.** at 59-60.

As the Missouri Court of Appeals did, the undersigned defers to the post-conviction motion court's credibility determination in considering the prejudice prong. **Smulls**, 535 F.3d at

864.  Moreover, the undersigned presumes the state court's factual findings regarding Petitioner's credibility and evidence of Petitioner's guilt are correct, because Petitioner has not provided any evidence, much less clear and convincing evidence, to rebut those findings.  **Id.** at 864-65 (presumption of correctness of factual findings applies to factual determination made by a state appellate court); 28 U.S.C. § 2254(e)(1) (the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence).  Moreover, the state court findings are supported by the evidence and are not unreasonable in light of the information available to the state court.  See 28 U.S.C. § 2254(d)(2) (federal habeas relief may be granted if the state court adjudication of the merits of a habeas claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented to the state court).

Based on clearly established federal law regarding the effective assistance of counsel arising out of a guilty plea, and the available record, including the evidence of Petitioner's guilt and the absence of credible testimony by Petitioner regarding ground two, the undersigned concludes that Petitioner did not establish prejudice for his ineffective assistance of counsel claim in that ground.

The undersigned finds that the Missouri Court of Appeals' decision affirming the motion court's denial of this ineffective assistance of counsel claim is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts.  Therefore, ground two should be denied as without merit.

### Conclusion

The petition should be denied because grounds one, three, and four are procedurally barred and ground two is without merit.

Accordingly, after careful consideration,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Conrad Dominicus [Doc. 1] be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained; and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/  Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of December, 2015.